Sams *v.* Redevelopment Authority, Appellant.

Argued October 2, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas W. Corbett,* with him *Aaron M. Kress,* for appellant.

*John N. Scales,* with him *Scales and Shaw,* for appellees.

OPINION BY MR. JUSTICE COHEN, August 15, 1968:

In the exercise of its power of eminent domain, appellant, Redevelopment Authority of the City of New Kensington, adopted a resolution condemning a certain parcel of land situate in New Kensington. The parcel of land condemned was individually owned by appellees, William Sams and Samuel Mannarino and was situate on the west side of North Third Avenue. On February 17, 1964, the date of taking, the condemned parcel was being used as a yard for the receipt, salvaging, bailing and shipping of scrap metal.

At the time of the taking, the individual appellees owned another parcel of land located on the opposite or easterly side of North Third Avenue. This parcel was separated from the condemned parcel by both a public street and railroad. The uncondemned parcel at the time of the taking was being used as a foundry operated by New Kensington Sales and Rentals, Inc.

The board of viewers awarded damages in the amount of $350,000 to the appellees individually, and as copartners, trading and doing business as Ken Iron and Steel Company. The board in assessing damages treated the two noncontiguous parcels as a unit.

Appellant appealed to the Court of Common Pleas of Westmoreland County. The jury returned a verdict in favor of appellees in the amount of $200,-000 and in accordance with instructions given by the trial judge answered "yes" to the question, "Have you allowed damages for Parcel B, the foundry building, in your verdict?"

Appellant filed its motion for a new trial on the grounds that it was error to admit evidence concerning the foundry property, and the unity of use between

the scrap yard and the foundry, when as a matter of law there could be no unity of use. The court below denied the motion for a new trial and entered judgment for appellees. This appeal followed.

In order for damages to be assessed as if two or more noncontiguous tracts of land were one parcel, it is necessary to demonstrate that the noncontiguous tracts are owned by one owner and are used together for a unified purpose (unity of use). Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-605.[1]

Appellant argues that the doctrine of unity of use does not apply because the salvage yard property was operated as a partnership while the foundry property was operated as a corporation and hence since there was no single use of both properties, there cannot be as a matter of law any unity of use. We agree.

After thoroughly researching case authority in this Commonwealth, we are firmly convinced that recovery has never been permitted under the unity of use doctrine absent joint identical users of both parcels of land. In fact, the very concept of unity of use, in our view, dictates that there be identical users as well as identical ownership of the properties involved. It is difficult to conceive that a unity of use can exist when there are two separate and distinct legal entities operating each parcel of land. It is a contradiction in terms to speak of a unity of use where there is more than a single user, since implicit in the definition of unity of use is the connotation that both parcels are so completely integrated, inseparable and interdependent so as to make the operation of one impossible without the operation of the other. Where there are separate users (completely different entities) of the par-

---

[1] For a complete discussion of this section see Snitzer, Pennsylvania Eminent Domain 319 (1965), wherein the author points out that this section merely codifies existing case law.

244

cels involved, the use of both cannot be said to be so inseparable as to make them a unit for purposes of damages in a condemnation proceeding.

Here we have separate parcels of land being used by distinct legal entities, i.e., the condemned parcel, the scrap yard was operated by appellees individually as copartners, and the uncondemned parcel, the foundry, was operated by New Kensington Sales and Rentals, Inc., a Pennsylvania Corporation, the latter of which we now hold cannot, as a matter of law, be considered as a unit for condemnation purposes.

Appellees argue that if one user is essential in order to establish a unity of use, we should not hesitate in piercing the corporate veil because the corporation was solely owned by Mr. Sams and Mr. Mannarino and by doing so we would be furthering the practical application of the intent of the law.

The corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime. See Fletcher Cyc., Corporations, §41 (Rev. Ed. 1963), and the numerous cases cited therein; Stevens, Corporations, §18 (1949). *Gagnon v. Speback,* 389 Pa. 17, 131 A. 2d 619 (1957); *Satler v. Rice,* 184 Pa. Superior Ct. 550, 135 A. 2d 775 (1957). Here the corporate shareholders are requesting that the corporate enterprise, voluntarily formed for certain business advantages, ought to be disregarded for their benefit in order to receive increased damages as a result of the present condemnation proceedings. This we refuse to do.

The cases on disregarding the corporate entity suggest that in order for the courts to justify piercing the corporate veil, it must be determined that the corporate fiction is being used by the corporation itself to defeat public convenience, justify wrong either to third

parties dealing with the corporation, or internally between shareholders (derivative suits), perpetrate fraud or other similar reprehensible conduct. Since, in the instant case, the corporate fiction is not being employed as a means to shield itself from its ultimate responsibilities and liabilities, no sound reason exists for piercing the veil for the benefit of the individual shareholders, who created the veil in order to procure other business advantages. In our view, one cannot choose to accept the benefits incident to a corporate enterprise and at the same time brush aside the corporate form when it works to their (shareholders') detriment. The advantages and disadvantages of the corporate structure should be seriously considered and evaluated at the time such organization is contemplated and after incorporation has been selected, the shareholders cannot be heard to argue that the courts should not treat them as a corporation for some purposes and as a corporation for other purposes, whichever suits their present economic interest.

For these reasons we hold (1) that unity of use doctrine necessitates a single user and (2) no sound, judicious reason exists why we should pierce the corporate veil in order to establish a single user for purposes of allowing increased damages in the present condemnation proceedings.

Judgment reversed and case remanded to the court below to proceed in accordance with this opinion.

Mr. Justice EAGEN dissents.