## Smith Estate

*Hyman Witzer, pp.,* for exceptant.
*John J. Harrison, Jr.,* contra.

SILVERSTEIN, *J.,* June 15, 1977—Lawrence M. C.Smith died August 10, 1975, leaving a will dated January 5, 1968, and a codicil thereto dated May 14, 1969, both of which were duly probated. Letters testamentary were granted to Eleanor Houston Smith on August 21, 1975, and proof of advertisement thereof is annexed. . . .

A claim, in the amount of $100,000, was entered against the estate by one Hyman Witzer. Mr. Witzer bases his claim upon an alleged improper use of a trade name, "Philadelphia Guide," by decedent. At the hearing on this claim, Mr. Witzer insisted upon representing himself, notwithstanding the court's repeated suggestion that he obtain counsel because of the complexity of the legal question involved and the difficulty of proving damages if such there were.

Hyman Witzer obtained a certificate to do business under the fictitious name of "Philadelphia Guide" from the Commonwealth of Pennsylvania on March 16, 1948. Claimant testified that he produced the Philadelphia Guide in folder and also in newspaper form once a year from 1948 to 1961 and thereafter he published it twice a year in newspaper form until 1970. Claimant offered no evidence of any damages sustained by him but merely relied upon what he believes the law of this Commonwealth to be, that is, if there is a misuse of a fictitious name and profits inure to the benefit of the one so using it, the court will fix the damages independent of any provable loss.

A witness for the estate testified that he had been

employed by the Franklin Broadcasting Company. This latter company was the outgrowth of a sole proprietorship owned by decedent. It operated radio station WFLN and in conjunction therewith it produced, under copyright, a publication called "WFLN Program Guide." In 1960, decedent sold the business to a new corporation and in return decedent received 450 shares out of 600 shares issued. In July of 1960, after the incorporation, the broadcasting company issued on a monthly basis a publication called "WFLN Philadelphia Guide to Events and Places." The publication was used as an adjunct to the company's main business, that of a radio broadcasting station. The guide listed its programs for the month of issue.

The accountant also introduced into evidence another booklet entitled "Philadelphia Magazine Guide." This was published in 1968 by a local magazine known as "Philadelphia Magazine." This publication was distributed with the compliments of the Philadelphia Bar Association.

The claim must be dismissed for a variety of reasons which are set forth hereinafter. There was no evidence that decedent, individually, ever published a book, pamphlet or newspaper using the title "Philadelphia Guide." When the Franklin Broadcasting Company was individually owned, it published a "WFLN Guide." When the company was incorporated, it was, apparently, for a valid business purpose. There was no evidence that it was done with the specific intent to escape liability for a specific tort or class of torts. The corporate entity or personality will be disregarded or the corporate veil pierced only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime: Sams v. Redevelopment Au-

thority, 431 Pa. 240, 244 A. 2d 779 (1968). There is nothing in this case to justify a disregard of the corporate entity.

Claimant had registered the name "Philadelphia Guide" under the Fictitious Names Act of May 24, 1945, P.L. 967, as amended, 54 P.S. §28.1. The purpose of that act is to protect the public against imposition and fraud and not as a means to protect a trade name. In American Clay Manufacturing Co. (a corporation of Pennsylvania) v. American Clay Manufacturing Co. (a corporation of New Jersey), 198 Pa. 189, 47 Atl. 936 (1901), the court stated: "There are two classes of cases involving judicial interference with the use of names, first, where the intent is to get an unfair and fraudulent share of another's business, and second, where the effect of defendant's action, irrespective of his intent, is to produce confusion in the public mind and consequent loss to the complainant." Nothing in the present case leads us to conclude that the decedent intended to get an unfair or fraudulent share of the claimant's business (whatever it was), nor does the use of the title "WFLN Philadelphia Guide" create confusion in the public mind.

Claimant has registered his name under the Fictitious Names Act but not under the Trade and Commerce Statutes of September 26, 1951, P.L. 1518, as amended, 73 P.S. §12, and, therefore, he is not entitled to the protection of those acts nor is he entitled to relief under the common law for the reason that he has not established that the name of his publication has acquired a secondary meaning. Neither decedent nor his corporation deliberately utilized the claimant's name in an effort to confuse the public or to impair the profitability, if any, of claimant's publication. See Drug Fair-Community

Drug Co., Inc. v. Drug Fair, Inc., 453 Pa. 454, 309 A. 2d 363 (1973).

Finally, claimant is not entitled to recover because he has not established any damages; he has presented no testimony indicating the nature of and the amount of his profits, if any, and the diminution thereof, if such was the case, resulting from a radio broadcast station's use of a program guide. His approach throughout the hearing has been that in some way the court will award him something. This court is empowered to do a great number of things, but it has no power to wave a magic wand in an effort to resolve the problems of those who come before it.

## ORDER

And now, June 15, 1977, the account is confirmed nisi.

## OPINION SUR EXCEPTIONS

KLEIN, *J.*, November 10, 1977—Decedent, Lawrence M. C. Smith, was an officer, director, and principal shareholder of Franklin Broadcasting Co., a Pennsylvania corporation organized in 1960. The corporation operated radio station WFLN and published a monthly copy-righted publication entitled "WFLNPhiladelphia Guide to Events and Places." Hyman Witzer, claimant, registered the name "Philadelphia Guide" under the Pennsylvania Fictitious Names Act of May 24, 1945, P.L. 967, as amended, 54 P.S. §28.1, in 1948. Mr. Witzer presented a claim for $100,000 against decedent's estate alleging an improper use of the trade name "Philadelphia Guide."

The auditing judge dismissed the claim.

Mr. Witzer, who is acting as his own attorney, filed exceptions in the following form:

"I, Hyman Witzer, Claimant in the above Estate, hereby file Exceptions to the Adjudication of Silverstein, J. dated June 15, 1977.

/s/     Hyman Witzer
claimant"

We have uniformly held that filing defective exceptions is a compelling reason for their dismissal. In Herbert Estate, 65 D. & C. 2d 443 (1974), we said, at pp. 443, 444:

"Exceptions to the adjudication of an account in a decedent's estate should set forth clearly and with particularity not only the alleged error of the auditing judge in making his awards but also his alleged error in not making the awards which exceptants claim should have been made. See Henderson's Estate, 29 D. & C. 1 (1937); Farrell's Estate, 1 D. & C. 128 (1921); Verdelli Estate, 17 Fiduc. Rep. 192 (1967)."

It is clear that the exceptions before us completely fail to comply with these requirements.

However, we are always reluctant to dispose of litigation by resorting to technical rules. It has therefore been our practice in cases such as this to review the entire record carefully to make certain that an injustice has not been done. We have made such a study in this case and are completely satisfied that there is no merit to exceptant's claim.

Little can be added profitably to what has been said by the auditing judge in his comprehensive and well reasoned adjudication.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.